UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERRY RUTLIN,                         )
                                      )
            Petitioner,               )
                                      )
      vs.                             )        Case No. 4:15 CV 658 ACL
                                      )
CINDY GRIFFITH,                       )
                                      )
            Respondent.               )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Jerry Rutlin for a writ of habeas corpus

under 28 U.S.C. § 2254.

## I.   Procedural History

Rutlin is currently incarcerated at the Potosi Correctional Center in Mineral Point,

Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Francois County,

Missouri.   (Doc. 12-2 at 61-62.)   On June 16, 2011, a jury found Rutlin guilty of concealing

prohibited articles in a correctional facility.   (Doc. 12-1 at 77.)   The court sentenced him to life

imprisonment.   *Id.* at 83.

In his direct appeal of his conviction, Rutlin raised two claims: (1) the evidence was

insufficient to support his conviction; and (2) the trial court erred in allowing testimony that

Officer Browers offered to take a voice stress test.   (Doc. 12-4.)   On October 23, 2012, the

Missouri Court of Appeals affirmed the judgment of the trial court.   (Doc. 12-6.)

Rutlin filed a *pro se* motion for post-conviction relief under Rule 29.15.   (Doc. 12-7 at

6-37.)   After appointment of counsel, an amended post-conviction relief motion and request for

evidentiary hearing was filed.   *Id.* at 39-74.   The amended motion raised the following

ineffective assistance of counsel claims: (1) trial counsel failed to investigate, subpoena, and call

inmate Reginald Parker to testify at trial; (2) trial counsel failed to elicit details related to periods of time when cell rooms were open and accessible to other inmates; (3) trial counsel failed to object to the prosecutor's use of Rutlin's prior convictions as propensity evidence; (4) appellate counsel failed to raise plain error in the trial court's prohibition against defense counsel arguing that Rutlin's cellmate had the opportunity and motive to plant the weapon; and (5) trial counsel failed to elicit or introduce evidence related to cell searches and inspections. *Id.* The motion court denied Rutlin's amended motion and his request for an evidentiary hearing. *Id.* at 75-80.

In his appeal from the denial of post-conviction relief, Rutlin argued that trial counsel was ineffective in failing to call Rutlin's cellmate, Mr. Parker, to testify. *Id.* at 19. He also argued that appellate counsel was ineffective in failing to allege error in the trial court's refusal to allow the defense to argue that the weapon belonged to Parker. *Id.* at 21. The Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 12-10.)

Rutlin filed the instant Petition, through counsel,[1] on April 21, 2015, in which he raises the following grounds for relief: (1) the evidence was insufficient; (2) Officer Browers' testimony was irrelevant and prejudicial; (3) he was denied an evidentiary hearing; (4) appellate counsel was ineffective in failing to raise plain error in the trial court's ruling preventing defense counsel from arguing that the weapon belonged to Parker; and (5) trial counsel was ineffective in failing to test the weapon. (Doc. 1.)

On July 10, 2015, Respondent filed a Response to Order to Show Cause, in which he argues that the Petition is untimely; Ground Five is procedurally defaulted; and all of Rutlin's claims fail on their merits. (Doc. 12.)

Rutlin filed a Motion for Discovery, in which he requested that the Court direct the State to make available for fingerprint testing the weapon at issue in the underlying criminal case.

---

[1]Rutlin changed counsel on two different occasions throughout the course of this action.

(Doc. 29.) Respondent opposed the Motion. (Doc. 31.) The Court denied Rutlin's Motion for Discovery on October 26, 2017. (Doc. 34.) Rutlin then filed a Traverse, in which he provides further argument in support of his claims.

## II.    Facts[2]

Viewing the evidence in the light most favorable to the jury's verdict, the record reveals David Wallace and Joshua Browers worked as correctional officers at Eastern Reception Diagnostic Correctional Center ("ERDCC"). Correctional officers routinely perform cell searches for contraband, including items that could cause injury to staff members and other inmates. Cell searches are conducted randomly and each cell must be searched a minimum of one time per month, though cells may be searched more frequently.

Each cell houses a maximum of two inmates and contains a lower and upper bunk and two footlockers. The ERDCC assigns each inmate a specific bunk. Rutlin was assigned to the upper bunk. Footlockers are not assigned, but are chosen by the inmates. The other parts of the cell are common areas available to both inmates. Cells are locked when not occupied by inmates.

When conducting a cell search, two correctional officers visually check the cell. One officer searches the bunk area while the other officer searches the footlockers. As part of the inspection, the officer takes the bedding off each mattress, searches the bedding, and turns each mattress over. The officer also searches any personal effects under the mattress and in the bedding.

---

[2]The Court's recitation of the facts is taken from the decision of the Missouri Court of Appeals on direct review. (Doc. 12-6 at 4-5.)

Cell inspections are conducted prior to an inmate moving into a cell. The officers document any damage or contraband found. After the inspection, the inmate signs documentation confirming the inspection results.

Rutlin moved into a new cell on June 1, 2009. The cell was inspected in Rutlin's presence. The inspection did not reveal any contraband. Rutlin signed documentation confirming the cell inspection results. Prior to Rutlin's occupancy, the cell was randomly searched on May 19, 2009, and on May 27, 2009, and no contraband was found.

On June 7, 2009, Wallace and Browers conducted a routine and random search of Rutlin's cell. After visually checking the cell, Wallace searched the top bunk which revealed state-issued clothing and bedding tagged with Rutlin's name and Department of Corrections number. Wallace lifted the mattress and found a pair of Rutlin's pants, other personal items, and some magazines. Wallace lifted Rutlin's pants and saw what he believed to be a weapon. He described the weapon as a razor handle with a razor blade melted into the end of it, and he testified that these types of items were commonly used to cause injury to staff or other inmates. Wallace secured the weapon and completed the cell search.

On June 23, 2009, Rutlin filed an informal resolution request ("IRR") with his case worker. Rutlin claimed Wallace and Browers planted the weapon. Rutlin requested that a voice stress analysis be given to him and the officers.

At trial, Wallace, Browers, Cedric Clerk, and Rutlin testified. On direct examination, Wallace read a portion of Rutlin's statement from the IRR alleging the "prison-made knife" was planted by Wallace and Browers. Wallace denied planting the weapon and targeting Rutlin. On cross-examination, at Rutlin's request, Wallace read the portion where Rutlin requested all parties be subjected to a voice stress analysis test. Likewise, Browers denied planting the weapon and read his written response from the IRR as follows, "I did not plant any prison-made

4

weapon in [Rutlin's] cell. Furthermore, I have no reason to target this offender. I would gladly participate in a 'Voice Stress Analysis' test. If I can be of any further assistance please contact me." Rutlin objected to the response as inadmissible because it referenced Browers' offer to take a lie detector test. The trial court overruled the objection.

Clerk, an inmate and Rutlin's friend, testified that he previously occupied Rutlin's cell before being placed in segregation. Clerk testified he left a weapon underneath some of his clothes under his bunk, and he did not receive the weapon and other personal items although he signed the property slip indicating he received all of his property. He described the weapon he left as a razor blade attached to the handle of a black comb.

Rutlin admitted at trial that the officers did not plant the weapon found during the search of his cell. Rutlin admitted that he was assigned to the top bunk but argued his cellmate had access to the cell. Rutlin claimed the weapon had been left by the previous occupant, Clerk, and he had never seen the weapon prior to trial. Rutlin repeatedly testified that if he had a weapon it would have been hidden so well it would not have been found. Rutlin admitted he had two prior convictions for possession of a controlled substance in a correctional center.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Collins*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV.   Statute of Limitations

Respondent first argues that the Petition should be dismissed because Rutlin failed to file his Petition within one year as required by 28 U.S.C. § 2244(d)(1)(A). "The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year limitations period for state prisoners to file federal habeas corpus petitions." *Bear v. Fayram*, 650 F.3d 1120, 1122 (8th Cir. 2011) (citing 28 U.S.C. § 2244(d)(1)). This one-year period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A habeas petition filed after the expiration of the limitations period is untimely and must be dismissed on that basis. *Bear*, 650

F.3d at 1122, 1125.

Where, as here, the petitioner does not appeal to the state's highest court, the judgment becomes final when the time for seeking review with the highest court expired. *Gonzalez v. Thaler,* 132 S.Ct. 641, 653-54 (2012). Rutlin's time for seeking review with the Missouri Supreme Court expired fifteen days after the Missouri Court of Appeals issued its opinion in his case. Mo. Sup.Ct. R. 83.02 (application for transfer to Supreme Court to be filed within fifteen days of appellate opinion). Thus, the limitations period began to run on November 7, 2012, fifteen days after the Missouri Court of Appeals issued its October 23, 2012 opinion on Rutlin's direct appeal.

The limitations period is tolled, however, while a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2). The pendency of post-conviction review includes the time between the trial court's denial of post-conviction relief and the filing of an appeal from the denial. *Beery v. Ault,* 312 F.3d 948, 950 (8th Cir. 2002). It also includes the time during the appeal process, up through the date on which the court of appeals issues its mandate. *Payne v. Kemna,* 441 F.3d 570, 572 (8th Cir. 2006).

On February 7, 2013, Rutlin filed his motion for post-conviction relief, tolling the statute of limitations. At that time, ninety-two days of the limitations period had run, and two hundred seventy-four days remained. The post-conviction case ended when the Missouri Court of Appeals issued its mandate on July 25, 2014. The time for filing the petition expired two hundred seventy-four days later, on April 25, 2015. Rutlin filed his Petition on April 21, 2015, four days prior to the expiration of the statute of limitations.

Respondent's claim that the Petition is untimely is based on his erroneous belief that the post-conviction case was no longer pending when the time for seeking rehearing or transfer ended,

rather than the date the mandate issued.   Eighth Circuit precedent is clear that the date on which

the mandate issues controls.   *See Payne,* 441 F.3d at 572; *Streu v. Dormire*, 557 F.3d 960, 968

(8th Cir. 2009).

Thus, Rutlin's Petition filed on April 21, 2015, was timely.

## V.      Petitioner's Claims

Rutlin raises five grounds for relief.   The undersigned will discuss these claims in turn.

## A.      Ground One

In his first ground for relief, Rutlin argues that the evidence was insufficient to sustain his

conviction of concealing a prohibited article.   He argues that the State did not prove that he

knowingly concealed the weapon because the weapon was found in an area accessible to other

inmates.

The statutory language of the criminal offense of which Rutlin was convicted provides, in

relevant part, as follows:

> It shall be an offense for any person to knowingly deliver, attempt to deliver, have
> in his possession, deposit or conceal in or about the premises of any correctional
> center…:
> (4)   Any gun, knife, weapon, or other article or item of personal property that may
> be used in such manner as to endanger the safety or security of the correctional
> center…or as to endanger the life or limb of any offender or employee of such a
> center.

Mo. Rev. Stat. § 217.360.

The Missouri Court of Appeals held as follows:

> Section 217.360 creates an inference of possession and control where a
> person has exclusive control of the premises.   *Ross v. State*, 48 S.W. 3d 667, 671
> (Mo. App. W.D. 2001).   However, where there is a joint control of the premises,
> the State is required to show further evidence the person had knowledge of the
> presence of the object.   *Id.*   This further evidence should demonstrate that the
> person had knowledge and control over the object.   *See State v. Ramsey*, 358
> S.W.3d 589, 591-92 (Mo. App. S.D. 2012); *State v. Cushshon*, 218 S.W.3d 587,

8

592 (Mo. App. E.D. 2007). Although circumstantial evidence is sufficient, where defendant is not present at the scene, circumstantial evidence should be closely scrutinized to make certain the evidence points to defendant and is not "just circularly to joint possession." *State v. Smith*, 33 S.W.3d 648, 653 (Mo. App. W.D. 2000).

The court will look at the totality of the circumstances to determine whether sufficient further evidence has been proven. *Smith*, 33 S.W.3d at 653. Further evidence demonstrating defendant's knowledge and possession may include defendant's conduct and mannerisms including any declarations, admissions, contradictory statements and explanations, as well as his access to the area where the object was found. *State v. Dethro*, 674 S.W.2d 546, 550 (Mo. App. E.D. 1984). The commingling of the item with the defendant's personal belongings can also show knowledge and control. *State v. Steward*, 844 S.W.2d 31, 33 (Mo. App. W.D. 1992).

Although Appellant did not have exclusive control of the cell, we find further evidence demonstrates he had knowledge and control. First, Appellant had routine access to the bunk bed specifically assigned to him, and the weapon was found underneath the mattress of his bunk bed commingled with his personal belongings (his pants, magazines, and other items). *See Steward*, 844 S.W.2d at 33; *Dethrow*, 674 S.W.2d at 550. Second, Appellant made contradictory statements first blaming the officers for planting the weapon, then admitting his accusations were false, and then claiming the weapon had been left there by his friend, Clerk. *See Dethrow*, 674 S.W.2d at 550. Third, the short proximity between the cell inspection which yielded no weapon and the random cell search in which the weapon was found (seven days), coupled with the inconsistent description of the weapon Clerk allegedly left and the weapon found in Appellant's cell could lead a reasonable jury to infer Appellant's knowledge and control of the bed and the weapon. *See Dethrow*, 674 S.W.2d at 550. Therefore, based on the totality of the circumstances there was sufficient evidence from which a reasonable jury could have found Appellant guilty of knowingly concealing a prohibited article in a correctional center.

(Doc. 12-6 at 8-10.)

In reviewing a challenge to a sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Accord Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. State law determines the specific elements of the crime at issue. *Fenske v. Thalacker*, 60 F.3d 478 (8th Cir. 1995). The federal habeas court's scope of review is very limited. The Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted). Furthermore, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker*, 567 U.S. at 43 (quotation marks omitted).

The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Consistent with *Jackson v. Virginia*, supra, the Missouri Court examined whether the testimony presented at trial established the elements of the crime as defined under Missouri law. The State was only required to prove that Rutlin knowingly concealed the weapon. The Missouri Court of Appeals found that, although Rutlin did not have exclusive control of the cell, sufficient evidence was presented that he had knowledge and control of the weapon. The court cited the fact that the weapon was found underneath the mattress of Rutlin's assigned bed commingled with his personal belongings, Rutlin made contradictory statements regarding the placement of the weapon, a recent search conducted after Clerk was transferred had yielded no weapon, and Clerk's description of the weapon he allegedly left was inconsistent with the weapon found in Rutlin's cell. The undersigned's review of the record shows that the State court's determination of the facts is supported by the record. It was reasonable for the Missouri Court of Appeals to find that a jury could infer the weapon belonged to Rutlin under all the circumstances.

Thus, Ground One is denied.

**B.      Ground Two**

In his second ground for relief, Rutlin argues that the trial court erred in allowing the irrelevant and prejudicial testimony of Officer Browers.

Rutlin filed an IRR alleging that the officers planted the weapon in his cell and requesting that all parties be subjected to voice stress analysis and lie detector testing.   During Officer Wallace's direct examination, the State offered Rutlin's written IRR into evidence, over defense counsel's hearsay objection.   (Doc. 12-1 at 41.)   The State questioned Officer Wallace about Rutlin's statement in the IRR that Wallace and Bower planted the razor.   *Id*.   On cross-examination, defense counsel asked Wallace to read the portion of Rutlin's IRR in which Rutlin requested that he, Officer Wallace, and Officer Browers take voice stress tests and/or lie detector tests.   *Id*. at 42.

During the subsequent direct examination of Browers, the State asked Browers about his response to Rutlin's IRR.   *Id*. at 48-49.   Defense counsel objected to testimony about Browers' response, particularly the part in which Browers volunteered to take a voice stress test.   *Id*.   The court denied the objection, finding Browers could testify regarding how he responded to the IRR. *Id*.   Browers read his written response from the IRR, as follows:

> I did not plant any prison-made weapon in [Rutlin's] cell.   Furthermore, I have no reason to target this offender.   I would gladly participate in a 'Voice Stress Analysis' test.   If I can be of further assistance please contact me.

(Doc. 12-1 at 49.)

The Missouri Court of Appeals stated that admissions of an officer to take a lie detector test are generally inadmissible in criminal trials, but can be admissible under the "rule of completeness" or to rebut evidence introduced by a defendant.   (Doc. 12-6 at 11).

The court held as follows:

Appellant opened the issue surrounding Browers' response to the lie detector test when Appellant alleged they "planted" the weapon, then introduced evidence on cross-examination from Wallace that (1) Appellant requested Wallace and Browers take a lie detector test, and (2) Appellant volunteered to take a lie detector test. It would be fundamentally unfair to allow Appellant to bring in evidence of his willingness to submit to a lie detector test and his request that the officers submit to a test without allowing Browers to testify to his response that he did not plant the weapon, and he was willing to take a lie detector test at Appellant's request. *See Kemper*, 191 S.W.3d at 50. The trial court did not abuse its discretion in admitting this evidence because the evidence gave a more complete picture of the contested evidence.

Further, Appellant opened the door to Browers' response when he had Wallace read that he requested they submit to a voice analysis test. Appellant cannot now claim error when he opened the door. *See State v. Uka*, 25 S.W.3d 624, 626 (Mo. App. E.D. 2000) (defendant may not take advantage of self-invited error nor complain about matters he himself brings into the case). We will only reverse on the basis of evidentiary error if the error is so prejudicial that it deprived Appellant of a fair trial. *Anderson*, 76 S.W.3d at 277. We find no such error. Point two is denied.

(Doc. 12-6 at 12.)

As the Supreme Court has emphasized, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions," such as the admissibility of evidence at trial. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent constitutional violation. *See Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Id.* (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *See Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996).

Here, Rutlin fails to demonstrate a due process violation resulting from the admission of Browers' testimony. The Missouri Court of Appeals found that the trial court did not err in admitting Browers' statement because Rutlin introduced evidence from Wallace regarding Rutlin's request for lie detector testing and offer to undergo testing himself. Permitting Browers to testify regarding his response to Rutlin's request gave a complete picture of the evidence. Further, as the State court noted, Rutlin cannot claim error when he opened the door to Browers' response. The State court determination was not based upon unreasonable determinations of the facts or misapplications of clearly established federal law.

Thus, Ground Two will be denied.

## C.     Ground Three

In Ground Three, Rutlin claims that he was denied an evidentiary hearing by the motion court on his claim that trial counsel was ineffective for failing to call Rutlin's roommate, Reginald Parker.

Rutlin's claim that he was denied an evidentiary hearing before the motion court is non-cognizable on federal habeas review as such a determination is a matter of state law. *Estelle*, 502 U.S. at 67-68; s*ee also Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) (internal quotations and citations omitted) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application.").

Respondent, however, has construed this claim as an ineffective assistance of trial counsel claim. The Court will do the same.

The State filed a motion in limine seeking to preclude the defense from offering any testimony or evidence incriminating others, including Clerk and Parker, without evidence directly connecting them to the crime. (Doc. 12-2 at 18-20.) At a pre-trial hearing on the motion,

defense counsel indicated that he planned to call Clerk to testify that he left the weapon at issue in Rutlin's cell before Clerk was transferred.   (Doc. 12-1 at 9-10.)   Defense counsel testified he intended to introduce evidence suggesting that the weapon could have been Parker's, but he did not intend to call Parker to testify that he planted the weapon or knew that it was there.   *Id*. at 10. The court granted the motion in limine as to Parker, excluding any argument that the weapon belonged to Parker unless there was evidence connecting Parker to the weapon.   (Doc. 12-1 at 11.)   The motion was denied as to Clerk.   *Id.*   The court granted the State's request to endorse Parker as a witness, in the event Parker became necessary to rebut some defense evidence.   *Id*. at 13.   Neither party called Parker as a witness at trial.

Rutlin now argues that trial counsel was ineffective in failing to call Parker to testify.   He contends that Parker had a strong motive and opportunity to plant a weapon on Rutlin, and includes the following allegations in support:   Parker had a strong dislike for Rutlin, Parker believed he was in physical danger by Rutlin, Parker and Rutlin got into a heated argument related to the television in the cell a few days before the razor was found, Parker had either asked the officers to search the cell or informed them that Rutlin had been acting aggressively, and Parker knew of numerous times that his and Rutlin's cell was open and accessible by other inmates. (Doc. 1 at 22-23.)

In order to state a claim of ineffective assistance of trial counsel, Rutlin must meet the *Strickland* standard:   he must demonstrate that counsel's performance was deficient and that he was prejudiced by that performance.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney.   *Id*.   To establish prejudice, Rutlin must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.   Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he

question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect, but whether the determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (internal quotations and citations omitted).

The motion court rejected Rutlin's claim, holding as follows:

> Movant's first claim is entirely without merit. Ostensibly Movant's claim is that Parker would have served as a witness to testify that "he believes the weapon belonged to someone else, that he has a conviction for child molestation, that he knows it is illegal to have a weapon in the DOC, that he would know how to hide…and plant a weapon on someone he did not like if he wanted to, and that one cellmate could be unaware that another cellmate had a weapon in the cell…" Amended Motion at 8-9.

> So, as summarized by Movant, Parker would be expected to essentially incriminate himself and absolve Movant. Movant shows no basis for why he believes Parker would do such a thing, but nonetheless, assuming that is the case, this claim must fail. To be entitled to a hearing on the issue of failure to call witnesses, a movant must allege the witnesses could have been located through reasonable investigation, they would have testified if located, and their testimony would have provided a viable defense. *Thompson v. State*, 779 S.W.2d 666, 667 (Mo. App. E.D. 1989).

> Counsel cannot be cited as ineffective for failing to call witnesses solely to impeach or rebut the State's evidence. The improbability of Parker's supposed testimony combines with the notion the inferences which could be reasonably drawn from the evidence as summarized about *infra* means Parker would be called to rebut the testimony of the corrections officers. The failure to call impeachment witnesses does not warrant relief where the facts, even if true, do not establish a defense. *State v. Gollaher*, 905 S.W.2d 542, 548 (Mo. App. E.D. 1995); *see also Londagin v. State*, 141 S.W.3d 114, 119-120 (Mo. App. S.D. 2004).

(Doc. 12-7 at 76.)

The Missouri Court of Appeals affirmed the decision of the motion court. The court found that counsel's decision not to call Parker was not unreasonable, because the trial court's ruling "specifically prohibited the defense from implicating Parker at trial in the absence of sufficient evidence directly connecting him to the weapon," and counsel "acknowledged that the defense did not have such evidence." (Doc. 12-10 at 7.) The court also found that Rutlin was

unable to demonstrate prejudice because Rutlin failed to show Parker would have incriminated himself or provided testimony to absolve Rutlin.   *Id*. at 8-9.   Further, the court noted that much of the information Rutlin contends Parker would have provided was already in evidence or refuted by the record.   *Id*.   For example, the jury was aware of the fact that Parker was Rutlin's roommate and had access to the cell when the weapon was found; and Officer Wallace testified that the search was random and that he did not receive a tip.   *Id*. at 8.

The Missouri court's determination is supported by the record and reasonably applies clearly established federal law.   That determination is, therefore, entitled to deference by this Court.   *See Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).   Rutlin has demonstrated neither deficient performance nor prejudice from the failure to call Parker.   Ground Three will be denied.

### D.      Ground Four

In Ground Four, Rutlin argues that appellate counsel was ineffective in failing to raise plain error in the trial court's ruling preventing defense counsel from arguing that the weapon may have belonged to Parker.

The Missouri Court of Appeals found that this claim was not preserved for review because trial counsel did not make an offer of proof demonstrating what evidence he sought to introduce, nor did he raise this claim in the motion for new trial.   (Doc. 12-10 at 11.)   The court stated that, even if appellate counsel had raised this claim on appeal, it would not have granted relief.   *Id*.

Respondent argues that Rutlin's claim should be denied because the Missouri Court of Appeals found it was unpreserved.   In his Traverse, Rutlin states that he concedes that Ground Four "must be rejected as unexhausted and defaulted."   (Doc. 37 at 16.)

Accordingly, Ground Four is denied.

### E.      Ground Five

In his fifth and final ground for relief, Rutlin argues that trial counsel was ineffective in

failing to test the weapon for fingerprints.    Respondent contends that this claim is procedurally defaulted and fails on its merits.

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state court a fair opportunity to apply controlling legal principles to the facts bearing on the claim.    *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted).    A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state court that he is attempting to raise in his federal petition.    *Id*. at 1021.    Claims that have not been fairly presented to the state courts are procedurally defaulted.    *Id*. at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).    Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default.    *Id*.    "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Rutlin does not contest that he failed to raise this claim before the State courts.    Instead, Rutlin claims that his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), because post-conviction counsel was ineffective for failing to raise the claim.

The Supreme Court held in *Martinez* that:

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.

To satisfy *Martinez*, Rutlin must show that his counsel in the initial post-conviction proceeding was ineffective under the standards of *Strickland*.    *Id*. at 14.    He must also show "that

17

the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." *Id.* As for what amounts to a "substantial" claim, the Supreme Court in *Martinez* suggested (by citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)) that courts should apply the standards for certificates of appealability to issue. *Id.*; *see also Barnett*, 941 F. Supp.2d at 113. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right." "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

This Court has already addressed Ground Five, including the issue of whether *Martinez* applies to excuse the default of this claim, in connection with Rutlin's Motion for Discovery. In that Motion, Rutlin requested that the Court direct the State to "make available for testing the alleged concealed weapon, as well as comparison fingerprints from inmates Reginald Parker and Cedric Clerk." (Doc. 29 at 3.) Rutlin argued that the requested fingerprint evidence would "easily resolve the question of whether Mr. Rutlin can show prejudice from the failure to have the item tested." *Id.* The Court denied that motion, finding that Rutlin failed to establish good cause for the requested discovery. (Doc. 34.) The undersigned further stated that "the current record is sufficient to resolve Rutlin's *Martinez* claim." *Id.* at 5. The Court found that, because the record does not support Rutlin's claim that trial counsel's performance was constitutionally deficient, he had not shown the presence of a "substantial" ineffective assistance of trial counsel claim to excuse his procedural default of Ground Five under *Martinez*. *Id.*

In his Traverse, Rutlin now challenges the Court's analysis and findings contained in the Order denying discovery. (Doc. 37 at 17.) Rutlin argues that the Court incorrectly applied the *Martinez* standard in finding Rutlin's underlying claim was not substantial. He contends that he

18

must merely show that his claim meets the standards for a certificate of appealability – that reasonable jurists could disagree on rejecting it – and that there is no question that he has done so. Rutlin argues that he is entitled to both discovery and an evidentiary hearing on this ground.   *Id.*

First, to the extent Rutlin is requesting that the Court reconsider its ruling on the motion for discovery, the Court declines to do so.   The current record is sufficient to resolve Rutlin's claims. As to the Court's *Martinez* analysis, Rutlin accurately states that this Court should apply the standard for certificate of appealability in determining whether a claim is "substantial."   That is, in order to demonstrate his claim is "substantial," Rutlin must show that the issue of whether his constitutional rights have been violated is debatable among reasonable jurists.   *Martinez*, 566 U.S. at 14; *see also Box*, 133 F.3d at 569.   The Court disagrees with Rutlin's assertion that "there is no question" Rutlin has made such a showing.

Rather than further examine whether Rutlin has sufficiently shown cause to excuse his procedural default under *Martinez*, it is in the interest of judicial efficiency to consider the merits of Rutlin's underlying ineffective assistance of counsel claim under the *Martinez* exception.   *See, e.g. Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir. 2006) (because procedural default is not a jurisdictional bar to federal habeas review, it can be bypassed "in the interest of judicial economy").

As stated above, to establish ineffective assistance of counsel, Rutlin must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense.   *Strickland,* 466 U.S. at 687.   "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment."   *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689).

The lack of fingerprint evidence was discussed prior to trial.   (Doc. 12-1 at 14.)   Defense

counsel stated that he planned to ask the State's witnesses if they collected any fingerprints, and the court indicated this line of questioning was permissible. *Id*. During cross-examination of State witness Wallace, the correctional officer who found the weapon in Rutlin's cell, counsel elicited from Wallace that no fingerprints were taken off the weapon. *Id*. at 45. Counsel also questioned defense witness James Nicholson, investigator for the Department of Corrections, regarding the lack of fingerprint evidence obtained. *Id*. at 56. An evidentiary hearing is not necessary to discern that defense counsel's strategy at trial was to rely on Clerk's testimony that the weapon was his. Clerk's testimony combined with the failure to test the weapon for fingerprints was the defense theory to create reasonable doubt. The Court finds that this strategy was reasonable; the fact the strategy was not successful does not mean trial counsel's performance fell outside "the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016.

Further, Rutlin is unable to demonstrate prejudice due to counsel's failure to obtain fingerprint evidence. He has not shown that fingerprint testing would have produced evidence to support his contention that the weapon was planted on him. As discussed in the Order (Doc. 34) denying discovery, there is a reasonable possibility fingerprint testing would have resulted in inculpatory evidence instead. *See Rice v. Hall*, 564 F.3d 523, 525 (1st Cir. 2009) ("Defense counsel had to consider the likelihood that further forensic testing on items found in the apartment would have provided a link to *Rice*, thus supplying the missing forensic link"); *Chambers v. Sec'y PA Dept. of Corr.*, 442 Fed.Appx. 650, 655-56 (3d Cir. 2011) (relying on *Rice*, finding "Petitioner failed to show that trial counsel was unreasonable for attempting to avoid a comparison test that might have provided the prosecution with damning evidence placing Chambers at the crime scene").

The only support Rutlin has for his claim that the weapon was planted is his own speculation. This type of speculation is insufficient to meet the heavy burden to "undermine

confidence in the outcome" of the trial.  *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); *Strickland*, 466 U.S. at 694.  *See, e.g., Walls v. Bowersox*, 151 F.3d 827, 835 (8th Cir. 1998) (finding that § 2254 habeas petitioner failed to establish prejudice from trial counsel's allegedly deficient performance in not obtaining additional testing; petitioner made no showing that such testing would have revealed exculpatory or mitigating information" and offered only "speculation" that testing might have done so).

Additionally, Rutlin's claim is predicated on the faulty assumption that if fingerprint testing showed his prints were not on the weapon he would be exonerated.   It's quite possible that the results of any fingerprint testing would be found inconclusive.   The statute under which Rutlin was convicted required only that he knowingly concealed a prohibited article in a correctional center.   The State did not have to prove that Rutlin made the weapon, used it, or even touched it.  As such, the absence of Rutlin's fingerprints on the weapon, or even the presence of another inmate's fingerprints on the weapon, would not have established Rutlin's innocence of the charge.

Although the Court acknowledges that the evidence in this case was not overwhelming, this is primarily a function of the statute under which Rutlin was charged.   As discussed above, the Missouri Court of Appeals found based on the totality of the evidence that the evidence was sufficient to support Rutlin's conviction.   This decision was not constitutionally unreasonable.

Accordingly, the Petition will be denied.

## VI.   Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserved further proceedings.   *See Cox*, 133 F.3d at 569.   In this case, Rutlin has failed to make a

substantial showing of the denial of a constitutional right.   The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of September, 2018.